UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GARZA, et al., | No. 2:18-cv-01968-KJM-EFB |
| Plaintiffs, | |
| v. | <u>ORDER</u> |
| CONFI-CHEK, INC., et al., | |
| Defendants. | |

Plaintiffs David Garza, Naser Alzer, Kimberly Kennedy, Amandeep Singh and Samah Haider (collectively "plaintiffs"), on behalf of themselves and others similarly situated, bring this class action suit against defendants Confi-Chek, Inc., Peoplefinders.com, Enformion, Inc. and Advanced Background Checks (collectively "defendants") for violations of § 1681(e)(b) of the federal Fair Credit Reporting Act ("FCRA") and chapter 109 of the Texas Business and Commerce Code. First Am. Compl. ("FAC"), ECF No. 26, ¶¶ 1, 59. Confi-Chek, Inc. is the parent or holding company to subsidiary defendants Peoplefinders.com, Enformion, Inc. and Advanced Background Checks. *Id.* ¶ 17. On February 25, 2019, defendants moved to transfer this action to the Southern District of Texas. Mot., ECF No. 49. Plaintiffs oppose the motion, Opp'n, ECF No. 52, and defendants replied, Reply, ECF No. 54. On May 31, 2019, the court heard oral argument on the motion. After consideration, as explained below, the court GRANTS

the motion and orders this matter transferred to the Southern District of Texas for further proceedings.

I.      FACTUAL AND PROCEDURAL BACKGROUND

   A.      Factual Background

Defendants are consumer reporting agencies engaged in the business of "dispersing information concerning consumers for the purpose of furnishing 'consumer reports' . . . to third parties." FAC ¶¶ 17–19. Defendants' principal place of business is in Sacramento, California. *Id.* Defendants operate several background investigation websites that provide personal, and often highly sensitive, information about consumers within their database, including arrest and conviction records, if any. *Id.* ¶ 24. For a fee, users can obtain a background report on "virtually any person in the United States." *Id.* ¶ 25.

Named plaintiffs, who are citizens of Texas, allege defendants "maintain inadequate polic[ies] or procedures to insure they accurately assemble and provide consumer reports in compliance with the FCRA, especially in the matter of eliminating expunged, expuncted, or sealed criminal records from their websites and reports." *Id.* ¶¶ 12–16, 26. Plaintiffs contend defendants are attempting to avoid liability for erroneous or inaccurate information contained in these reports by claiming they are not actually consumer reporting agencies, do not sell consumer reports and are not subject to FCRA regulations. *Id.* ¶ 28. Regardless of the proper label applied to defendants, plaintiffs contend defendants are providing the same sensitive personal, legal and financial information, compiled using the same data sources, as the major consumer reporting agencies; this information is inevitably used for the same purpose as most users of major reporting agencies, namely consideration of employment, housing, credit worthiness, etc. *Id.* ¶¶ 29–30. As such, plaintiffs allege defendants are, in all respects, consumer reporting agencies as defined by § 1681a(f) of the FCRA.[1] *Id.* ¶ 32.

---

[1] 15 U.S.C. § 1681a(f) states: "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and

If defendants are subject to FCRA regulations, as plaintiffs claim, defendants must "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates, per 15 U.S.C. § 1681e(b)." *Id.* ¶ 33. Plaintiffs argue that defendants "regularly and illegally publish and report criminal records that have been expunged, expuncted or sealed by court order," thus violating FCRA standards. *Id.* ¶ 34. For example, the claims of three of the named class representatives stem from a Texas-based expungement service that discovered the class members' expunged or expuncted criminal records improperly published on defendants' database. *Id.* ¶ 35. Among the many harmful effects of defendants' unlawful practices, the most prominent is the consumer's inability to secure employment because of the erroneous criminal records in their reports. *Id.* ¶ 36.

Plaintiffs also allege these same practices violate chapter 109 of the Texas Business and Commerce Code, which governs business entities engaged in the publication of criminal record information. *Id.* ¶¶ 40–42. Because defendants allegedly received notice that certain criminal records have been expunged, yet failed to update the expunction in their own databases, plaintiffs claim defendants contravene Texas law. *Id.* ¶¶ 42–46.

B.   Procedural History

Plaintiffs initiated this action on July 16, 2018. ECF No. 1. On November 5, 2018, plaintiffs amended their complaint and now bring three causes of action on behalf of the putative class: (1) violation of FCRA § 1681e(b), (2) violation of Texas Business and Commerce Code sections 109.001–.007, and (3) injunctive relief under Texas law. FAC ¶¶ 66–76. Defendants have moved to transfer this action to the Southern District of Texas because, among other things, the named plaintiffs are Texas citizens and interpretation of Texas law is central to the resolution of this matter. Mot. at 1. Plaintiffs oppose transfer, Opp'n, and defendants have replied, Reply. The court resolves the motion below.

---

which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

3

## II. <u>LEGAL STANDARD</u>

"For the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "In ruling on a motion to transfer pursuant to § 1404(a), the Court must evaluate three elements: (1) convenience of the parties; (2) convenience of the witnesses; and (3) interests of justice." *Safarian v. Maserati North America, Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008) (citation omitted). "Once the court determines that venue is proper, the movant must present strong grounds for transferring the action . . . ." *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)). A motion to transfer venue under section 1404(a) "does not concern the issue 'whether and where' an action may be properly litigated. It relates solely to the question where, among two or more proper forums, the matter should be litigated to best serve the interests of judicial economy and convenience to the parties." *Injen Tech. Co. v. Advanced Engine Mgmt.*, 270 F. Supp. 2d 1189, 1193 (S.D. Cal. 2003) (citation and emphasis omitted).

In determining whether transfer is proper, the court must "balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal*, 805 F.2d at 843 (citations omitted). According to the Ninth Circuit, relevant factors determining whether transfer is appropriate include:

> (1) the location where relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (citing *Stewart Org.*, 487 U.S. at 29).

4

In addition to the above considerations, if venue is to be transferred, "the transferee court must have subject matter jurisdiction and . . . defendants must be subject to personal jurisdiction in the district, and be amenable to service of process there." *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 760 (C.D. Cal. 2016) (citing *A.J. Industries, Inc. v. U.S. District Court for Central Dist. of Cal.*, 503 F.2d 384, 386–88 (9th Cir. 1974)). These requirements are not subject to waiver by the parties; the court must perform an independent examination to determine if transfer is appropriate under section 1404(a). *See id.* ("[N]one of the requirements for transfer can be waived by the parties, and the Court cannot transfer the case if § 1404(a) is not satisfied." (citing *Hoffman v. Blaski*, 363 U.S. 335, 342–44 (1960)); *see also* 15 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3845 (4th ed. 2019) ("Transfer under Section 1404(a) is proper only to a judicial district or division where the plaintiff had a right—independent of the consent or wishes of the defendant—to bring the action.").

III.  DISCUSSION

    A.  Subject Matter Jurisdiction

The parties do not address subject matter jurisdiction in their briefing; nonetheless, the court must ensure the Southern District of Texas would have subject matter jurisdiction over this litigation if transferred. *Rubio*, 181 F. Supp. 3d at 760. For the same reasons subject matter jurisdiction adheres in this court, namely that plaintiffs' claims invoke 15 U.S.C. § 1681p (FCRA jurisdiction) as well as 28 U.S.C. §§ 1331 (federal question jurisdiction), 1332(a) (diversity jurisdiction), 1332(d)(2) (class action diversity jurisdiction) and 1367 (supplemental jurisdiction), the Southern District of Texas would have jurisdiction over this matter. *See* FAC ¶¶ 5–9.

    B.  Personal Jurisdiction

Unlike subject matter jurisdiction, the parties contest personal jurisdiction. Plaintiffs' chief argument opposing transfer is that defendants are not subject to personal jurisdiction in the Southern District of Texas; therefore, section 1404(a) is not satisfied because the Southern District of Texas is not a district in which the case "might have been brought." Opp'n at 9–15. Defendants argue they are consenting to personal jurisdiction in the Southern District of Texas through the filing of this motion and, regardless, they are subject to personal

5

1  jurisdiction in Texas because Texas is where a substantial part of the alleged harm occurred.
2  Reply at 2–4.
3        Because transfer is only appropriate to a district in which the case "might have
4  been brought," the court must analyze jurisdictional requisites at the time the case is initiated, not
5  the time transfer is requested. *See Hoffman*, 363 U.S. at 343–44 ("[T]he power of a District Court
6  under [§] 1404(a) to transfer an action to another district is made to depend not upon the wish or
7  waiver of the defendant but, rather, upon whether the transferee district was one in which the
8  action 'might have been brought' by the plaintiff."). Thus, defendants' waiver of personal
9  jurisdiction through their motion does not affect the court's analysis at this stage, although it is
10 relevant in part as discussed below, and may serve as a judicial admission at a later stage of the
11 case. Rather, the court must examine if personal jurisdiction over defendants existed in the
12 Southern District of Texas when plaintiffs initiated this action.
13       Generally, "personal jurisdiction over a defendant is proper if it is permitted by a
14 long-arm statute and if the exercise of that jurisdiction does not violate federal due process."
15 *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (citation omitted). When
16 analyzing personal jurisdiction in the context of venue transfer, the court looks to the long-arm
17 statute of the state in which the transferee court sits. *See Rubio*, 181 F. Supp. 3d at 760–61
18 (looking to Texas long-arm statute when considering transfer to Western District of Texas). As
19 relevant here, Texas's long-arm statute reaches those conducting business in Texas and to the full
20 extent of the federal Constitution. *Id.* at 761 (citing *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356
21 (Tex. 1990) (Tex. Civ. Prac. & Rem. Code § 17.042)).
22       Federal due process requires a defendant have sufficient "minimum contacts" with
23 the forum state and that maintenance of the matter not "offend traditional notions of fair play and
24 substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There are
25 two ways personal jurisdiction can adhere: (1) general jurisdiction, and (2) specific jurisdiction.
26 "'[G]eneral jurisdiction requires affiliations so continuous and systematic as to render the foreign
27 corporation essentially at home in the forum State.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069
28 (9th Cir. 2015) (alteration in original) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11

(2014)). Specific jurisdiction, on the other hand, relates to the nexus between a defendant's contacts with the forum and the harm alleged. *Daimler*, 571 U.S. at 127 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

### 1. General Jurisdiction

"[T]he 'paradigm' fora for general jurisdiction are a corporation's place of incorporation and principal place of business." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler*, 571 U.S. at 137)). Plaintiffs contend defendants are not subject to general jurisdiction in the Southern District of Texas because they are California corporations with their principal places of business in Sacramento. Opp'n at 12. Defendants do not rebut these claims; rather they admit to incorporation in California and that Sacramento serves as their principal place of business. *See generally* Reply; *see also* Answer to First Am. Compl., ECF No. 32, at 7–10. Accordingly, the court finds defendants are not subject to general jurisdiction in the Southern District of Texas because they are incorporated in California and their principal place of business is located in Sacramento.

### 2. Specific Jurisdiction

The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)).

Although the first prong speaks of both purposeful direction and purposeful availment, when a cause of action sounds in tort, as here, the court follows a purposeful direction analysis. *Marvix Photo*, 647 F.3d at 1228; *see also Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001) ("When a consumer brings an action . . . [under] the FCRA, . . . such cases are akin to invasion of privacy cases under state law-cases . . . ."). "The Ninth Circuit

7

'evaluate[s] purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 [] (1984)." *Zellerino v. Roosen*, No. SACV 16-485-JLS (AJWx), 2016 WL 10988763, at *6 (C.D. Cal. Aug. 22, 2016) (quoting *Schwarzenegger*, 374 F.3d at 803). Under the *Calder* effects test, the defendant must have: (1) committed an intentional act, which was (2) expressly aimed at the forum state, and which (3) caused harm the defendant knew was likely to be suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006).

Here, plaintiffs contend the Southern District of Texas cannot exercise specific jurisdiction over defendants because defendants "have not alleged that they created any contacts with the Southern District of Texas," or that this "lawsuit arises out of any contacts they created with that district," or that they have "availed themselves of the privilege of conducting activities" in that district. Opp'n at 13. Defendants contend specific jurisdiction exists because "a substantial part of the events giving rise to Plaintiffs' claims occurred in Texas," the source of plaintiffs' criminal records were maintained in Texas and, as Texas residents, plaintiffs experienced the alleged harm in Texas. Reply at 3–4.

The court finds defendants have purposefully directed their activities to the Southern District of Texas, thus subjecting themselves to specific jurisdiction in that district. The court need look no further than the First Amended Complaint to determine the *Calder* effects test has been satisfied. The first prong of the effects test, "intentional act," is satisfied by plaintiffs' allegations that defendants published criminal records under Texas law. FAC ¶¶ 40–43. The complaint specifically alleges that "Defendants made Plaintiffs' criminal record information available for inspection by anyone with access to the website; thus, 'publishing' such records under Texas law." *Id.* ¶ 43. These records were published despite defendants' knowledge the records were inaccurate in light of information contained in the Texas Department of Public Safety ("DPS") database. *Id.* ¶¶ 49–56. Given the Ninth Circuit's broad interpretation of the "intentional act" prong, *see, e.g.*, *Schwarzenegger*, 374 F.3d at 806, the court finds defendants acted intentionally given plaintiffs' allegations that they continued to publish plaintiffs'

8

inaccurate criminal records under Texas law, despite being aware of their duty to maintain accurate records, including with respect to the named plaintiffs in this action.

The second prong of the effects test, "expressly aimed," is also satisfied for these reasons. As the Supreme Court explained in *Calder*, "untargeted negligence" is not enough; but, "intentional, and allegedly tortious, actions [] expressly aimed" at the forum, that the defendants "knew would have a potentially devastating impact" and that "the brunt of that injury would be felt . . . in the State," is sufficient to satisfy this prong. *Calder*, 465 U.S. at 789–90. As the First Amended Complaint alleges, "[d]espite the repeated efforts of both the Plaintiffs and the State of Texas, the expunged criminal records for each and every Plaintiff continue to be published . . . on the Defendants' websites . . . ." FAC ¶ 54. These allegations support the conclusion, for jurisdictional purposes, defendants were aware of plaintiffs' plight, yet continued to publish inaccurate criminal records, knowing, either affirmatively or through willful ignorance, the harm caused by their actions would be most prominently felt where plaintiffs reside, in Texas.

Finally, for these same reasons, the third prong of the *Calder* effects is satisfied because defendants knew the harm would be felt by plaintiffs in the forum. As explained above, FCRA claims "are akin to invasion of privacy cases under state law[,]" and the "primary damage" caused in such cases "can only be felt where Plaintiffs' sensibilities reside." *Myers*, 238 F.3d at 1074 (quotations omitted). This is especially true where plaintiffs also allege defendants' same activities violate Texas law, causing harm to Texas residents. FAC ¶ 40. Here, plaintiffs and the state of Texas notified defendants of their noncompliance with reporting standards, yet defendants continued to publish inaccurate records. *Id.* ¶ 54. As a result, defendants were aware that their failure to publish accurate records could directly harm plaintiffs in Texas. *Id.* ¶¶ 48–56. The harm they allegedly caused was specifically felt in the Southern District of Texas, as three of the named plaintiffs reside in that district. *Id.* ¶¶ 12–16. For these reasons, defendants have purposefully directed their activities toward the Southern District of Texas.

Having found the *Calder* effects test satisfied, the court also finds that the exercise of personal jurisdiction over defendants by the Southern District of Texas will not offend traditional notions of fair play and substantial justice because defendants consent to personal

jurisdiction in that district. *See* Reply at 2–3. Although consent alone is insufficient to establish personal jurisdiction under section 1404(a), as noted above, consent is relevant when considering whether the exercise of personal jurisdiction is reasonable. *See Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005) ("When [jurisdictional consent has] been obtained through freely negotiated agreements and [is] not unreasonable and unjust, [] enforcement does not offend due process." (internal quotations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). For these reasons, defendants are subject to personal jurisdiction in the Southern District of Texas.

### C. Venue

Finally, given that both subject matter and personal jurisdiction would adhere in the transferee court, the court must also determine if venue is appropriate in the Southern District of Texas. For if venue is improper, transfer to the Southern District would not relocate this action to a "district or division where it might have been brought." 28 U.S.C. § 1404(a). The federal venue statute provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The First Amended Complaint alleges defendants' activities "fall squarely within the ambit" of Texas law, defendants were on notice of their alleged violations of Texas law and their actions caused harm to Texas residents, at least three of whom reside in the Southern District of Texas. FAC ¶¶ 12–16, 40–43, 52–54. Consequently, a substantial part of the events giving rise to these claims arose in the Southern District of Texas. *See Myers*, 238 F.3d at 1074 (in FCRA cases, which "are akin to invasion of privacy cases," harm "can only be felt where Plaintiffs' 'sensibilities' reside").

In sum, this case could have been brought in the Southern District of Texas. The court next considers whether transfer to that district is appropriate.

### D. Convenience Factors

As noted, there are several factors the court must consider when determining if transfer is appropriate. *See Jones*, 211 F.3d at 498–99 (detailing convenience factors). The court addresses the relevant factors below.

1. State Most Familiar with Governing Law

One factor a court must consider is "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action[.]" *Decker*, 805 F.2d at 843 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). Here, defendants argue because the "gravamen of this action is whether Defendants' websites 'publish' public information . . . in violation of . . . Texas law[,]" and because "this is a diversity case as well as a federal question case, [] it is well-settled that there is an interest in having the trial of [this] case in a forum that is at home with the law that must govern the action." Mot. at 5–6. Furthermore, defendants argue this case presents novel issues under Texas law, and therefore issues appropriate for resolution by Texas courts. *Id.* at 6–7; Reply at 6. Plaintiffs contend this factor is neutral because "the Southern District of Texas has no experience with [the Texas statute]." Opp'n at 16.

Defendants' argument is persuasive. As one court has explained, "[t]he familiarity-with-governing-law factor is meant to apply in cases involving state-law claims—it reflects a presumption that a federal court will know more about the substantive law of its home state (having derived this wisdom from handling diversity suits) than a federal court located in a different state." *Grabham v. Am. Airlines Inc.*, No. CV-17-03741-PHX-DWL, 2019 WL 316213, at *4 (D. Ariz. Jan. 24, 2019). Even if, as plaintiffs contend, the Southern District of Texas has yet to resolve a case under Texas Business and Commerce Code chapter 109, *see* Opp'n at 16–17, that does not impair the interest of Texas federal courts in resolving matters of state law applicable within their districts. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 n.6 (2013) (reiterating public interest factor "in having the trial of a diversity case in a forum that is at home with the law." (citing *Piper Aircraft*, 454 U.S. at 241 n.6)). Accordingly, this factor weighs in favor of transfer.

2. Plaintiffs' Choice of Forum

Generally, a plaintiff's choice of forum is afforded great deference. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). However, "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). This is especially true "when the plaintiff elects to pursue a

case outside its home forum." *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009); *see also GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) ("[A] plaintiff's choice of its home forum is given more weight than its choice of a foreign forum."). In determining what weight plaintiff's choice of forum is entitled, "consideration must be given to the extent of [the parties'] contacts with the forum, including those relating to [plaintiff's] cause of action." *Lou*, 834 F.2d at 739.

Defendants contend "Plaintiffs' chosen forum should be given no weight" because their opposition "offers virtually no defense of their decision to bring this action thousands of miles from their home in Texas." Reply at 5. Indeed, plaintiffs' opposition states merely that because they chose to file in this district, this factor weighs against transfer. Opp'n at 18. Here too defendants have the better argument. Plaintiffs bring this matter as a class action suit, all named plaintiffs reside in Texas, the First Amended Complaint in substantial part is based on a purported violation of Texas law and plaintiffs themselves have virtually no affiliation with the Eastern District of California. This district is home to defendants' principal place of business, but that is the only basis for plaintiffs' filing here. Consequently, the court gives little weight to plaintiffs' decision to bring this action in the Eastern District of California. *See Herman v. W. Union Co.*, No. 217-CV-00650-CBM-AJW, 2017 WL 5643145, at *2 (C.D. Cal. Mar. 30, 2017) ("Plaintiff's claims are brought on behalf of a putative class and there is no evidence Plaintiff is a resident of California. Accordingly, the Court finds Plaintiff's choice of forum is entitled to minimal weight.").

3. Convenience of the Parties

Defendants argue Texas is a more convenient forum because all five named plaintiffs reside in Texas and "virtually everyone in the purported Texas Class resides in Texas." Mot. at 9. Defendants also assert they will produce party-affiliated witnesses in the Texas forum, will notice plaintiffs' depositions in the Texas forum and intend to depose two principal fact and expert witnesses—Texas DPS and Easy Expunctions—in the Texas forum. Mot. at 9–10; Reply at 7–8. Although plaintiffs do not address this factor directly, they do so within the broader context of their opposition. *See generally* Opp'n ("The motion should be denied . . . because it is

12

not more convenient for the parties or the witnesses"; "none of the convenience factors weight in favor of transfer."). Based on the information before the court, this factor is neutral. On the one hand, named plaintiffs and two significant fact and expert witnesses[2] are located in Texas, and defendants will conduct nearly all depositions and produce their own party-affiliated witnesses in Texas. These factors make it highly unlikely litigating this action in the Southern District of Texas imposes a greater inconvenience to plaintiffs than litigating in the Eastern District of California. On the other hand, plaintiffs chose to file suit in defendants' home district, so it cannot be said defendants are inconvenienced should this action remain in the Eastern District of California. For these reasons, this factor weighs neither for or against transfer.

### 4. Convenience of Witnesses and Location of Evidence

Defendants argue transfer is appropriate because representatives of Easy Expunctions and Texas DPS, both readily identifiable fact and expert witnesses, are located in Texas and extensive discovery will be required involving each entity. Mot. at 8–9. Moreover, even if these entities and some third-party witnesses are beyond the 100-mile subpoena power of the Southern District of Texas provided by Federal Rule of Civil Procedure 45, maintaining this action in the Eastern District of California would only increase the burden on out-of-district witnesses or the travel burden on parties needing to go to witnesses located primarily in Texas, not California. Reply 8–10. Finally, defendants contend the location of evidence should be afforded little weight because the ease of electronic discovery alleviates concerns regarding physical document location in this action. Mot. at 10; *see also* Higgins Decl., ECF No. 49-1, ¶¶ 5–6 (defendants' records and information stored electronically).

In opposition, plaintiffs argue the locations of Easy Expunctions and Texas DPS, both in Texas, carries little weight because both corporate offices are outside the hundred mile radius of the Southern District of Texas, implying their representatives may be as well. Opp'n at 20. Additionally, plaintiffs will seek to depose defendants' current and former employees,

---

[2] As defendants note, the two employers of principal fact and expert witnesses, Texas DPS and Easy Expunctions, are identified in plaintiffs' own initial disclosures. Reply at 7; Lee Decl., ECF No. 54-1, ¶ 4, Ex. C.

making compulsory process necessary in the Eastern District of California as well. *Id.* at 21. Finally, plaintiffs contend the location of evidence is most convenient in this district because, as a general matter, "Defendants' computer systems and the Defendants' employees" are located in Sacramento. *Id.* at 22.

On balance, the evidence related to the convenience factors favor transfer. First, although plaintiffs require equal access to defendants' records, employees and data, all located in Sacramento, defendants represent that they will present all documents and persons relevant to discovery, either through electronic production or the production of employee deponents, in the Southern District of Texas. *See* Mot. at 9–10 ("Although Defendants are based in California, Defendants will produce their party-affiliated witnesses in Texas."; "Defendants' relevant information is all accessible in electronic form."). Given that this promise is made a matter of record here, plaintiffs will be able to hold defendants to it. Second, defendants' argument regarding the "proportional distance" consideration for out-of-district witnesses is well taken. *See* Reply at 9–10. As defendants highlight, the Fifth Circuit has adopted a "100 mile" rule when "neither venue enjoys absolute subpoena power over all witnesses." *Id.* (citing *Two-Way Media LLC v. AT & T Inc.*, 636 F. Supp. 2d 527, 534 (S.D. Tex. 2009)). "[W]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Two-Way Media*, 636 F. Supp. 2d at 535 (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008)). This rule is consistent with Rule 45(c)(1)(B), which contemplates a subpoena's potential to impose "substantial expense" upon the party subject to its power. Fed. R. Civ. P. 45(c)(1)(B)(ii). With this is mind, the potential burden upon non-party corporate witnesses Easy Expunctions and Texas DPS, and their respective representatives, is greater if this matter is litigated in California. As plaintiffs' initial disclosures identify, Lee Decl. ¶ 4, Ex. C, both Easy Expunctions and Texas DPS are located in Texas, and specifically the cities of San Antonio and Austin respectively; the relative burden imposed by an out-of-district subpoena is far greater if that subpoena originates in California, rather than Texas.

Finally, plaintiffs' argument that evidence is most easily obtained in this district as compared to the Southern District of Texas, Opp'n at 22, is offset by defendants' promise to produce all relevant evidence in Texas and the ease of electronic discovery, which mitigates any potential hinderance to otherwise accessible records. *See* Reply at 10 ("[T]he internet and electronic databases have vastly changed the physical burden of document gathering and production.").

In sum, the convenience factors weigh in favor of transfer.

5. Other Factors

Other factors are either inapplicable or neutral on the question of transfer. There are no relevant agreements at issue in this action; therefore, this factor is inapplicable. *See* Opp'n at 16 ("This case does not involve agreements between the parties, so this factor is neutral."). Further, this district's congested caseload does not outweigh congestion concerns in the Southern District of Texas. *See* Mot. at 10; Reply at 4–5. As defendants note, overburdened caseloads are not confined to the Eastern District of California, and although this district is objectively one of the most impacted districts in the nation and has been for many years, the Southern District of Texas itself maintains a robust caseload as well,[3] which is a significant burden in its own right; therefore, the relative caseloads of the two districts does not tip the scale in one direction or the other.

Finally, as to the parties' relative contacts with each forum, this factor is neutral. Plaintiffs reside in Texas, and their only association with California stems from defendants' business presence in Sacramento. *See generally* FAC. Likewise, defendants are California corporations and host their principal places of business in Sacramento; their primary connection to Texas stems from the harm caused by their alleged violations of the FCRA and Texas Business and Commercial Code chapter 109. *Id.*

---

[3] *See* United States Courts, *U.S. District Courts—National Judicial Caseload Profile*, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2019.pdf (last visited January 15, 2020).

On balance, the interests of the Southern District of Texas in resolving matters of Texas state law, the convenience of the witnesses, availability of evidence and other factors as well form the basis for transferring this matter to the Southern District of Texas.

## IV. CONCLUSION

Defendants' motion to change venue, ECF No. 49, is GRANTED. The Clerk of Court is directed to transfer this matter to the Southern District of Texas for further proceedings and then CLOSE this case.

IT IS SO ORDERED.

DATED: January 16, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE